TRACY A. DIFILLIPPO, ESQ.
Nevada Bar No. 7676
ARMSTRONG TEASDALE LLP
3770 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
Telephone: 702.678.5070
Facsimile: 702.878.9995
tdifillippo@atllp.com

*Attorneys for Plaintiff*

*Admiral Insurance Company*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>KABUL, INC. d/b/a FASTRIP PWC RENTALS, KABUL, INC. d/b/a FASTRIP FOOD STORE, DARRYL PETER ALEXANDER, JR., individually, TOMMY LYNCH, as ADMINISTRATOR for the ESTATE OF TAMMY LYNCH, and TOMMY LYNCH and APRIL BLACK, individually as heirs of TAMMY LYNCH<br><br>Defendants. | Case No.: ***<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff ADMIRAL INSURANCE COMPANY ("Admiral") by and through its counsel, Armstrong Teasdale LLP, hereby makes its Complaint against KABUL, INC. D/B/A/ FASTRIP PWC RENTALS and KABUL, INC. D/B/A FASTRIP FOOD STORE (collectively "Kabul"), DARRYL PETER ALEXANDER, JR. ("Alexander"), TOMMY LYNCH, as Administrator for the Estate of TAMMY LYNCH, TOMMY LYNCH, and APRIL BLACK, individually and heirs of TAMMY LYNCH (collectively "Lynch Defendants"), and allege as follows:

/ / /

/ / /

/ / /

## NATURE OF THE ACTION

1. This is an insurance coverage action seeking declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Admiral seeks a determination of the parties' rights and obligations under a Commercial Lines Policy, issued by Admiral to the named insured Kabul, Policy No. CA000038462-01, effective May 22, 2020 to May 22, 2021 ("Policy"). Specifically, Admiral seeks a determination that it does not have a duty to defend Kabul or Alexander, or indemnify Kabul or Alexander for the claims made and damages alleged by the Lynch Defendants in an underlying suit brought by the Lynch Defendants in the United States District Court of Nevada, Case No. 2:15-cv-00321-JAD-GWF ("Lynch Suit"). An actual controversy and dispute exist between the parties regarding whether Exclusion g. Aircraft, Auto, or Watercraft precludes coverage and whether certain endorsements under the Policy preclude or limit coverage.

## PARTIES, JURISDICTION, AND VENUE

2. Admiral is a Delaware corporation with its principal place of business located in Arizona. Admiral is a citizen of the States of Delaware and Arizona.

3. Defendant Tommy Lynch was and is the natural father and heir of the decedent, Tammy Lynch. Tommy Lynch is, and was at all times relevant herein, a citizen of the State of New York.

4. Defendant April Black was and is the natural mother and heir of decedent, Tammy Lynch. April Black is, and was at all times relevant herein, a citizen of the State of New York.

5. Tommy Lynch was appointed Administrator of the Estate of Tammy Lynch by the Surrogate's Court of the State of New York, Bronx County.

6. Upon information and belief, Defendant Alexander is and was at all times relevant herein, a citizen of the State of New York or Pennsylvania.

///

///

2

7. Defendant Kabul is and was at all times relevant herein, an Arizona corporation with its principle place of business 1131 Highway 95, Bullhead City, Arizona 86429. Defendant Kabul is, and was at all times relevant herein, a citizen of the State of Arizona.

8. The Lynch Suit was filed in the U.S. District Court of Nevada because, according to the Complaint, the Lynch Defendants' injuries occurred within the waters of the Colorado River within the jurisdictional boundaries of the U.S. District of Nevada, which involved a watercraft that Kabul rented to Alexander (the "Incident"). A true and correct copy of the complaint in the Lynch Suit is attached hereto as **Exhibit "1."**

9. The Incident is what gives rise to the claim for coverage under the Policy.

10. Pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, this lawsuit seeks a determination of the parties' rights and obligations under the Policy with respect to Admiral's defense and indemnification of Kabul in the Lynch Suit and whether Alexander is an "insured" under the Policy entitled to defense and indemnification in the Lynch Suit. Therefore, an actual controversy exists between the parties such that this Court may declare the rights and other legal relations of any interested party seeking such a declaration.

11. The Court has admiralty jurisdiction pursuant to 28 U.S.C. § 1331 because the Policy insured certain of Kabul's watercraft that it rented to customers to be used on the Colorado River and the issue herein is whether the Policy provides coverage for the watercraft at issue in the Lynch Suit.

12. The District of Nevada is the proper venue under 28 U.S.C. § 1391 because the Lynch Suit was filed in the U.S. District of Nevada and alleges that the Incident occurred within the boundaries of the District of Nevada, which gives rise to the claim for defense and indemnity under the Policy.

///

///

///

# THE COMMERCIAL LINES POLICY

13. For the policy period of May 22, 2020 to May 22, 2021, Admiral issued the Policy to its named insured, Kabul.

14. The Commercial General Liability Coverage Form provides Coverage A – Bodily Injury and Property Damage Liability. The Policy provides coverage limits of $1 million each occurrence and $2 million in the aggregate.

15. The Insuring Agreement for Coverage A – Bodily Injury and Property Damage Liability provides in pertinent part:

> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
> * * *
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided under Supplementary Payments—Coverages **A** and **B**.
>
> **b.** This insurance applies to "bodily injury" and "property damage" damage only if:
>
> **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
> **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
>
> **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the

policy period, that the "bodily injury" or "property damage" occurred, then any continuation change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

* * *

16. The Policy for Coverage A, provides the following exclusions:

**2. Exclusions**

This insurance does not apply to:

* * *

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

   **(1)** A watercraft while ashore on premises you own or rent;

   **(2)** A watercraft you do not own that is:
      **(a)** Less than 26 feet long; and
      **(b)** Not being used to carry persons or property for a charge;

   **(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto: is not owned by or rented or loaned to you or the insured;

   **(4)** Liability assumed under any "insured contract" for ownership, maintenance or use of aircraft or watercraft; or

   **(5)** "Bodily injury" or "property damage" arising out of:
      **(a)** The operation or machinery or equipment that is attached to, or part or, a land vehicle that would qualify under the definition of "mobile equipment" if it were

                not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

      **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

17.    The Policy contains the following definitions for Coverage A:

**SECTION VI – DEFINITIONS**

**3.** "Bodily injury" means physical injury, physical sickness or physical disease sustained by any one person, including death resulting from any of these at any time. "Bodily injury" does not include shock, emotional, mental or psychological distress, injury, trauma or anguish, or other similar condition, unless such condition results solely and directly from that one person's prior physical injury, physical sickness or physical disease otherwise covered under this insurance.[1]

\* \* \*

**13**. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**18. "**Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. . .

18.    The Policy provides Endorsement CG 24 12 11 85, effective 5/22/2020:

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART SCHEDULE**

**Description of Watercraft:**

PER SCHEDULE OF JET SKIS – ON FILE WITH OUR COMPANY

**Additional Premium**

INCLUDED

---

[1] This definition of "bodily injury" is pursuant to "Bodily Injury Redefined Endorsement," as provided on Form AD 08 42 02 16 of the Policy.

6

(if no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

1. Exclusion g. of COVERAGE A (Section 1) does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule.

2. WHO IS AN INSURED (Section II) is amended to include as an insured any person or organization legally responsible for the use of any such watercraft you own, provided the actual use is with your permission.

19. The Policy provides Endorsement AD 66 01 07 15, effective 5/22/2020:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**PUNITIVE DAMAGES EXCLUSION**

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

* * *

This insurance does not apply to punitive or exemplary damages, in whatever form assessed, awarded against any insured.

20. The Policy provides Endorsement AD 66 66 09 09, effective 5/22/2020:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Specified Ongoing and/or Completed Operations(s):**

ANY AND ALL RENTALS OF BOATS, RENTAL OF ATVS/UTVS. ANY AND ALL SALES, SERVICE OR REPAIR WORK.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury", "property damage" or

"personal and advertising injury" arising out of the operations designated in the Schedule. This exclusion applies whether the operations are or were performed by you on your behalf or whether the operations are ongoing or have been completed by you or on your behalf.

21. The Policy provides Endorsement AI 08 76 02 03, effective 5/22/2020:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**WAIVER OR LIABILITY AGREEMENT REQUIRED EXCLUSION**

This endorsement modifies insurance provided under the following

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

\* \* \*

This insurance does not apply to any "bodily injury," "property damage" or "personal and advertising injury" arising out of activities offered by FASTRIP WATERCRAFT RENTALS unless you have received a signed agreement and liability release from your client or customer in advance of and "occurrence" or loss of which includes an indemnification clause in which the signee, parent or guardian agrees to hold you harmless for any personal injuries, loss or damage to property.

## THE LYNCH SUIT

22. In the Lynch Suit, the Lynch Defendants allege that on August 21, 2020, the date of the Incident, Kabul rented the Yamaha watercraft to Alexander, negligently entrusted the watercraft to Alexander by failing to ensure that Alexander would operate the watercraft in a safe and reasonable manner, and failed to warn/instruct Alexander about the safe use and operation of the watercraft.

23. It is alleged that Kabul was negligent in failing to maintain, repair, store, and/or otherwise operate the watercraft or vehicle in a safe and proper manner or in compliance with legal requirements.

24. Against Alexander, the person who rented the watercraft from Kabul and who was operating it at the time of Tammy Lynch's death, the Lynch Suit alleges that Alexander was

negligent in stopping the watercraft in a highly trafficked area to speak to Tammy Lynch and ask Tammy Lynch a question, doing so suddenly and without scanning to see if there were other watercraft in the proximity.

25. The Lynch Defendants are seeking damages in excess of $75,000 against Kabul and Alexander.

26. The Lynch Defendants are also seeking punitive damages.

## WATERCRAFT SCHEDULE

27. The watercraft involved in the Incident was a 2020 Yamaha PWC number YAMA3877C020, which was registered to Kabul on or about June 25, 2020.

28. Prior to August 21, 2021, the date of the Incident, Kabul did not provide Admiral with a schedule that included YAMA3877C020.

29. Prior to August 21, 2021, the date of the Incident, Kabul did not notify Admiral that it registered YAMA3877C020.

30. At no time during the Policy's effective dates of May 22, 2020 to May 22, 2021, did Kabul provide Admiral a schedule that included YAMA3877C020 or otherwise notify Admiral that Kabul owned or rented YAMA3877C020 and that Admiral's liability risk under the Policy extended to YAMA3877C020.

31. Only after the Lynch Suit was filed on October 28, 2021, did Kabul first notify Admiral that it owned or had previously owned YAMA3877C020.

## ADMIRAL'S RESERVATION OF RIGHTS LETTER

32. On or about December 3, 2021, Admiral sent Kabul a Reservation of Rights Letter.

33. The Reservation of Rights Letter notified Kabul that the allegations and the claims in the Lynch Suit may not be covered under the Policy.

34. The Reservations of Rights Letter notified Kabul that based on the Complaint in the Lynch Suit, Admiral was providing a defense subject to Admiral's reservations of rights.

9

35. The Reservation of Rights Letter stated, among other things: "Admiral reserves the right to deny coverage to you for the claims made and damages alleged in the *Lynch* Complaint for the reasons set forth herein and subject to Admiral's right, which is reserved, to modify this reservation if new information becomes available warranting a modification."

36. The Reservation of Rights Letter also stated, among other things: "Admiral reserves the right to seek a judicial determination of what coverage, if any, is afforded for you under the Policy for the claims made and damages alleged in the *Lynch* Complaint, including Admiral's obligation to provide a defense."

37. The Reservations of Rights Letter further stated, among other things: "Admiral reserves the right to seek reimbursement from you of its defense costs in the event it is determined that no coverage exists for the claims made and damages alleged in the *Lynch* Lawsuit."

38. Kabul accepted Admiral's defense subject to its Reservation of Rights Letter.

## FIRST CAUSE OF ACTION

**(Declaratory Relief Regarding No Duty to Defend)**

39. Admiral hereby incorporates and realleges the allegations in paragraphs 1 to 38 as if fully set forth herein.

40. The Policy does not provide coverage for or a duty to defend Kabul and Alexander for the claims made and damages alleged in the Lynch Suit because those claims and damages constitute bodily injury arising out of the ownership, maintenance, use or entrustment to others of a watercraft owned or operated by or rented or loaned to any insured and thereby fit within Exclusion g. Aircraft, Auto or Watercraft and other provisions of Exclusion g. as set forth in paragraph 16 herein.

41. Endorsement CG 24 12 11 85 does not negate Exclusion g. Aircraft, Auto or Watercraft because YAMA3877C020 was not shown in any schedule on file with Admiral or otherwise revealed to Admiral at any time relevant hereto.

42. Alexander is not covered under the Policy because YAMA3877C020 was not shown

in any schedule on file with Admiral or otherwise revealed to Admiral at any time relevant hereto as required by Endorsement CG 24 12 11 85.

43. The Policy does not provide coverage for Kabul or Alexander for punitive or exemplary damages as provided in Endorsement AD 66 01 07 15.

44. The Policy does not provide coverage for claims made or damages alleged to have resulted from service or repair work as provided in Endorsement AD 66 66 09 09.

45. Admiral is informed and believes and thereon alleges that an actual controversy has arisen and now exists between Admiral and Kabul and Alexander with respect to Admiral's obligations, if any, under the Policy.

46. Admiral contends that it has no duty to defend Kabul and Alexander in the Lynch Suit pursuant to the Policy's provisions, and in accordance with prevailing legal authority.

47. Upon information and belief, Admiral alleges that Kabul and Alexander dispute or will dispute the foregoing contentions.

48. An actual controversy has arisen and now exists between Admiral and Kabul and Alexander with respect to Admiral's duty to defend Kabul and Alexander in the Lynch Suit, if any, under the Policy.

49. This Court is vested with the power in the instant case and Admiral respectfully requests a judicial determination and declaratory judgment of its rights with respect to its duty to defend Kabul and Alexander in the Lynch Suit.

50. Such a judicial declaration is necessary and appropriate at this time in view of the controversy and genuine dispute between Admiral, and Kabul and Alexander, as described above.

## SECOND CAUSE OF ACTION

**(Declaratory Relief Regarding No Duty to Indemnify)**

51. Admiral hereby incorporates and realleges the allegations in paragraphs 1 to 50 as if fully set forth herein.

52. Admiral contends that it has no duty to indemnify Kabul or Alexander for the claims made and damages alleged in the Lynch Suit and no obligation to the Lynch Defendants for any judgment entered in the Lynch Suit or any settlement thereof, pursuant to the Policy and in accordance with prevailing legal authority.

53. Upon information and belief, Admiral alleges that Kabul, Alexander, and the Lynch Defendants dispute or will dispute the foregoing contentions.

54. An actual controversy has arisen under the Policy and now exists between Admiral, Kabul, Alexander, and the Lynch Defendants with respect to Admiral's duty to indemnify Kabul and Alexander for the claims made and damages alleged by the Lynch Defendants in the Lynch Suit.

55. This Court is vested with the power in the instant case, and Admiral respectfully requests a judicial determination and declaratory judgment of its rights with respect to its duty to indemnify Kabul and Alexander for the claims made and damages alleged by the Lynch Defendants in the Lynch Suit.

56. Such a judicial declaration is necessary and appropriate at this time in view of the controversy and genuine dispute between Admiral and Kabul, Alexander, and the Lynch Defendants, as described above.

**PRAYER FOR RELIEF**

WHEREFORE, Admiral prays for judgment against Kabul, Alexander, and the Lynch Defendants, and each of them, as follows:

1. For a judicial declaration that Admiral has no duty to defend Kabul and/or Alexander under the Policy in the Lynch Suit;

2. For a judicial declaration that Admiral has no duty to indemnify Kabul and Alexander for the claims made and damages alleged by the Lynch Defendants including any judgment entered in the Lynch Suit;

3. For costs of suit incurred herein; and

4. For such other further relief as this Court may deem just and proper.

Dated this <sup>31st</sup> day of January, 2022.

ARMSTRONG TEASDALE LLP

By: /s/ *Tracy A. DiFillippo*
TRACY A. DIFILLIPPO, ESQ.
Nevada Bar No. 7676
3770 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169

*Attorneys for Plaintiff*
*Admiral Insurance Company*