# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Admiral Insurance Company,

        Plaintiff

  v.

Kabul, Inc., et al.,

        Defendants

Case No. 2:22-cv-00177-CDS-NJK

**Order Striking Alexander's Answer and Cross/Counterclaims and Denying as Moot RSG Specialty's Motion to Dismiss**

[ECF Nos. 66, 117, 133]

       This is a declaratory insurance action brought by plaintiff Admiral Insurance Company against defendants Kabul Inc., d/b/a Fastrip PWC Rentals, Kabul Inc, d/b/a Fastrip Food Store (collectively, "Kabul"), Darryl Alexander, and Tommy Lynch[1], April Black, (collectively, "Lynch Defendants"), and NBS Insurance Agency, Inc.[2] *See* Compl., ECF No. 1. This action arises out of a separate wrongful death action pending in this district.[3]

       There are several motions pending before the court, which include: (1) three motions for summary judgment (ECF Nos. 79; 126; 128) and one motion to dismiss (ECF No. 117). This order only addresses Alexander's untimely answer and cross/counter claims, and third-party defendant RSG Specialty, LLC's motion to dismiss. An order addressing the pending motions for summary judgment is forthcoming. For the reasons set forth herein, I strike Alexander's pleading in its entirety. Thus, NBS and RSG Specialty are dismissed from this action and RSG Specialty's motion to dismiss is denied as moot.

---

[1] Tommy Lynch is the administrator of the estate of Tammy Lynch.
[2] NBS advises it is improperly sued as Nationwide Brokerage Solutions. Accordingly, the court refers to this defendant as NBS throughout this order.
[3] The separate action is 2:21-cv-01981-ART-DJA (hereinafter, the Lynch Action).

## I.    Relevant procedural history

Admiral brought this declaratory action on January 31, 2022. Compl., ECF No. 1. Admiral seeks a determination that it has no duty to defend or indemnify Kabul and/or Alexander in the Lynch Action under a policy it issued. *Id*. at 11–12. The Lynch Action, currently being litigated, was brought against Kabul on behalf of Tammy Lynch, who unfortunately lost her life during a waterskiing accident, for alleged negligence arising out of Kabul's rental of a jet ski to Alexander. The Lynch Defendants stipulated and agreed to dismiss Kabul and Alexander from the Lynch Action with prejudice, with each party to bear its own costs and attorney's fees. *See* 2:21-cv-01981-ART-DJA, Order, ECF No. 90. The parties came to a good faith settlement which was approved by the court. *Id*. at ECF No. 100.

In March 2022, Kabul filed its answer to the complaint, and brought a third-party complaint against Gregg Eidsness Farm Bureau Financial Services (GEFB), seeking damages for alleged negligence by GEFB for failing to provide Admiral with an updated list of covered jet skis. ECF No. 14 at 10–14. In April 2023, GEFB filed a motion for summary judgment in its favor for the third-party complaint brought by Kabul, alleging that discovery does not support Kabul's allegations. ECF No. 79. Kabul and Alexander jointly oppose the motion. ECF No. 90.

In March 2023, Alexander, represented by Kabul's counsel, filed an answer to the complaint. ECF No. 66. The answer included a negligence counterclaim against Admiral, and negligence crossclaims against GEFB, NBS, and RSG Specialty. *Id*. at 10–29.

As relevant here, on August 25, 2023, RSG Specialty filed a motion to strike and/or dismiss Alexander's claims against them, arguing that Alexander is in default, that relevant deadlines have passed, and that Alexander failed to exercise diligence, which has resulted in damages to RSG Specialty for having to defend against this action. *See generally* ECF Nos. 117; 118. Alexander opposes both motions. ECF Nos. 121; 122.

1    In February 2024, I denied Admiral, NBS, GEFB, and RSG Specialty's motions to strike

2   (ECF Nos. 72; 73; 107; 118) without prejudice. Order, ECF No. 133. In conjunction with that

3   order, I ordered Alexander to show cause why sanctions should not be issued for failing to

4   timely file an answer, and further explain why this court should permit him to untimely bring

5   cross and/or counterclaims. *Id.* Alexander complied with that order and a filed responsive brief

6   on February 26, 2024. ECF No. 134. Therein, Alexander argues that striking his answer would be

7   an unwarranted "extreme sanction," that good cause exists for the late answer, amongst other

8   arguments. *See generally id.*

9    NBS, RSG Specialty, and Admiral all filed responses to Alexander's brief. ECF Nos. 135;

10  136; 137. NBS argues that the response, which includes a declaration filed by Alexander's

11  attorney, is defective because the declaration fails to comply with 28 U.S.C. § 1746, and further

12  that it would be prejudiced by the untimely third-party claim against it. ECF No. 135.

13   RSG Specialty argues that Alexander's response to the show cause order fails to discuss

14  excusable neglect, good cause, and fails to explain why he never filed a motion to enlarge the

15  time to add new parties within the last year. *See* ECF No. 136 at 9–15. RSG Specialty also argues

16  Alexander's claims of improper service should be disregarded as no motion to quash has ever

17  been filed, and Alexander has never raised that issue before even though he has had knowledge

18  of this action. *Id.* at 5–9. Last, RSG Specialty asks that this court either strike the untimely

19  answer or issue another appropriate sanction. *Id.* at 16–22.

20   Admiral responds that Alexander fails to meet the good cause standard and that allowing

21  the answer and counterclaim against it would be prejudicial. *See generally* ECF No. 137. Like NSB

22  and RSG Specialty, Admiral asks the court to strike the untimely answer and counterclaim as a

23  sanction. *Id.* at 6–7.

24

25

26

## II.    Discussion

There is no dispute that Alexander's answer and cross/counterclaims was untimely. This leaves the court with two options: (1) to dismiss Alexander's untimely claims or (2) allow the answer and cross/counterclaims to stand, which would necessitate re-opening discovery and re-setting all deadlines. Given the information before the court, option two is untenable. Because cross-claims and counterclaims are not independent pleadings, rather, they are part of the answer, *see Koga-Smith v. MetLife*, 2013 WL 894780, at *1 (N.D. Cal. Mar. 8, 2013) ("[T]he Court notes that a crossclaim or counterclaim is not an independent pleading but rather is part of the answer."), and because, as explained further below, Alexander's response to the show cause order fails to demonstrate good cause of his untimely answer, this court grants the motion to dismiss.

### A.  Alexander fails to demonstrate good cause for his untimely pleading.

"[T]he filing of a late answer is analogous to a motion to vacate a default, because the party filing the late answer receives the same opportunity to present mitigating circumstances that it would have had if a default had been entered and it had moved under Rule 55(a) to set it aside." *McMillen v. J.C. Penney Co.*, 205 F.R.D. 557, 558 (D. Nev. 2002) (internal quotation marks and alterations omitted) (quoting *John v. Sotheby's, Inc.*, 141 F.R.D. 29, 35 (S.D.N.Y. 1992)). As a result, Alexander's answer is treated as a motion to set aside default. *See id*. The court has discretion to set aside a default or default judgment. *See* Fed. R. Civ. P. 55(c), 60(b); *Brandt v. Am. Bankers Ins. Co. of Fl.*, 653 F.3d 1108, 1111–12 (9th Cir. 2011).

The inquiry of whether to vacate default is an equitable determination "taking account of all relevant circumstances surrounding the party's omission." *Brandt*, 653 F.3d at 1111–12 (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). When resolving a defendant's request to set aside default the court's "underlying concern . . . is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th

4

Cir. 1986). "Crucially, however, [default] judgment [] is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *See United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (quotation omitted). Accordingly, the court resolves any doubt regarding whether to grant relief in favor of vacating default. *See O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994).

A court may set aside an entry of default for "good cause." *See Mesle*, 615 F.3d at 1091. The defendant bears the burden of showing good cause under this test. *Hawaii Carpenters'*, 794 F.2d at 513–14. To determine whether a defendant has shown good cause justifying vacating default, a court considers three factors: (1) whether the defendant engaged in culpable conduct that led to the default; (2) whether the defendant had a meritorious defense; and (3) whether reopening the default would prejudice the plaintiff(s). *See Franchise Holding II, LLC v. Huntington Rests. Group.*, Inc., 375 F.3d 922, 925 (9th Cir. 2004). This standard is disjunctive; the court may deny the request to vacate default if *any* of the three factors is true. *Id.* (emphasis added).

I address each factor independently and find that Alexander fails to meet his burden showing good cause for his untimely pleading.

### 1. Alexander is culpable for his conduct of filing an untimely answer.

"A party's conduct is culpable if he has received actual or constructive notice of the filing of the action and failed to answer the complaint." *In re Hammer*, 940 F.2d 524, 526 (9th Cir. 1991). Alexander argues that his conduct was not culpable because the affidavit of service was served on Jason "Doe," not on Alexander, and "[n]o prior or further contact with Darryl Alexander prior to his answer is alleged." ECF No. 134 at 7. This argument is wholly unpersuasive.

First and foremost, I already determined that Alexander has waived any defense for improper service. Order, ECF No. 133 at 4–5 ("Here, Alexander failed to challenge personal jurisdiction in his answer and failed to file a pre-answer motion, so his arguments regarding that defense [of improper service] are waived."). Second, Alexander was served with the complaint in the Lynch Action **at the same address** on March 8, 2022, a mere seven days before he was served

in this action **at the same address**. *Compare* Alexander Summons in 2:22-cv-00177-CDS-NJK at ECF No. 13 *with* Alexander Summons in 2:21-cv-01981-ART-DJA at ECF No. 27. Despite Alexander's representation—which is disingenuous at best—I nonetheless address his argument.

Looking at the summons, Alexander was properly served on February 26, 2022 when the service documents were left with his co-resident, Jason "Doe" who was 45 years old at the time of service. Executed Summons, ECF No. 13. Federal Rule of Civil Procedure 4(e)(2) allows service by leaving copies of the summons and the complaint at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. Alexander does not actually challenge service. Instead, he offers the declaration of his attorney, Thomas Christensen, who attempts—and fails—to argue that Alexander did not know about this action when the deadline to file an answer passed on March 21, 2022. Christensen Decl., Ex. 1., ECF No. 134 at 12. Christensen states that Alexander did not learn of this action until late February or early March of 2023. *Id.* As a threshold matter, this questionable representation is without consequence because Alexander was properly served. Further, Christensen's declaration fails to include any discussion or explanation as to why Alexander did not submit an affidavit or declaration explaining what occurred. More egregious, Christensen's declaration directly conflicts with prior representations by Christensen suggesting that *did have* notice of this action. Christensen himself filed a response in July of 2023 to RSG Specialty's motion for demand for security of cost (ECF No. 109) stating that "[Alexander] could not afford to be involved in litigation and initially did not respond,"[4] (*id.* at 3), which suggests that Alexander did have knowledge of this action, but seemingly based on perceived inability to participate due to costs, failed to respond. Regardless, I do not consider Christensen's declaration in resolving this

---

[4] "[A] statement in a complaint, answer or pretrial order is a judicial admission" and "statements of fact contained in a brief *may* be considered admissions of the party in the discretion of the district court." *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988) (emphasis in original).

motion because it fails to comply with 28 U.S.C. § 1746 because it is not made under penalty of perjury. The record demonstrates that Alexander is culpable for the untimely filing his answer and counterclaims. They were filed over a year after their due date, so default is appropriate.

### 2. *Alexander does not set forth a meritorious defense.*

"A defendant seeking to vacate a default judgment must present *specific facts* that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 700 (9th Cir. 2001) (emphasis added). "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094. "'[T]he question whether the factual allegation [i]s true' is not to be determined by the court when it decides the motion to set aside the default. Rather, that question would be the subject of the later litigation." *United States v. Aguilar*, 782 F.3d 1101, 1107 (9th Cir. 2015) (citation omitted). But a "mere general denial without facts to support it" is not enough. *See Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969). "If . . . the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening judgment." *Id.* at 1106 (quoting *TCI Group*, 244 F.3d at 697).

Alexander argues that "[t]he defenses to the declaratory action against Alexander include the same defenses which Admiral has been litigating with Kabul." ECF No. 134 at 7. Specifically, Alexander states that: (1) Kabul paid for the transaction that allowed Alexander to operate the jet ski which resulted in the Lynch claim; (2) Admiral "filed this Declaratory Relief action in order to strip Defendant, its insured, of a defense and coverage rather than taking affirmative action to protect Defendant as to the Lynch lawsuit"; (3) Admiral "knowingly sued the wrong party in this matter"; and (4) that Alexander filed a summary judgment motion against Admiral and opposed Admiral's summary judgment motion against him. *Id.*

However, these arguments are insufficient basis to meet even the low threshold to demonstrate a meritorious defense. Alexander's assertion that he paid for the transaction or that Admiral sued the wrong party—without factual support or further analysis—is insufficient to

7

satisfy his burden. *See Cassidy v. Tenorio*, 856 F.2d 1412, 1416 (9th Cir. 1988) (holding that a "naked, conclusory allegation, without a statement of underlying facts which tend to support such an allegation, is insufficient to make out a colorable claim to a meritorious defense."); *see also Sovereign Capital Res., LLC v. Armstrong Square Ltd. P'ship*, 58 F. App'x 335, 336 (9th Cir. 2003) (statement that defendant "believed" she had a meritorious defense was insufficient to set aside entry of default because it "consisted of legal conclusions devoid of factual support"); *see also Cassidy*, 856 F.2d at 1416 (finding that defendant's allegation that he was cajoled into signing a promissory agreement through fraud or undue influence, without any supporting evidence, was not a meritorious defense so as to warrant relief from default judgment). And to the extent it was a concern, Alexander's argument that Admiral filed the instant action against him instead of protecting him in the Lynch Action should have been raised in the Lynch Action, not here. Nonetheless, Alexander was represented by counsel in the Lynch Action and came to a good faith settlement. *See* Order, ECF No. 101 in 2:21-cv-01981-ART-DJA ("Having found Plaintiffs and Defendants Kabul, Inc. and Darryl Peter Alexander, Jr. have come to a good faith settlement, the Court approves the settlement. . .The Clerk of Court is directed to dismiss with prejudice Defendants Kabul and Alexander from this case.") Alexander's asserted "defenses" are merely conclusory statements, bereft of any specific factual support. Consequently, I cannot find that Alexander has set forth any meritorious defenses.

### 3. Reopening the default would prejudice Admiral.

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Group*, 244 F.3d at 701. "[M]erely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting default" as vacating default "merely restores the parties to an even footing in the litigation." *Id.* "'[T]he standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" *Id.* (quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)) (alteration in original). Alexander argues there is no prejudice to Admiral stating:

> The discovery in this case has been limited by the Court to the discovery conducted by Kabul in defending the claims by Admiral. Both Kabul and Alexander are limited to that discovery as the case proceeds to trial. By allowing the answer and cross/counterclaims to remain, no party is prejudiced. Admiral is the principal party that brought the declaratory claim. The involvement of the other Defendants is as participants in defrauding the Insureds. The involvement of additional Defendants does not change the status of the answer and defenses of Alexander or Kabul. These other Defendants are not prejudiced by Alexander's answer at all. The answer should not be stricken.

ECF No. 134 at 8.

In opposition, Admiral argues that it is prejudiced by Alexander's untimely answer and counterclaim because it was filed on the day discovery closed. ECF No. 137 at 4. As a result, Admiral explains that it was unable to depose Alexander to evaluate the factual basis of his pleading and the documents upon which he would rely at trial with respect to his defenses in his answer and was also unable to conduct *any* discovery related to Alexander's counterclaim. *Id.* Indeed, discovery closed on March 22, 2023 (*see* Order, ECF No. 63) and Alexander did not file his answer and cross/counter claim until March 22, 2023 (ECF No. 66). *Id.*

Further, Admiral, RSG Specialty, GEFB, and NBS will all be prejudiced by Alexander's late filing as it conflicts with Federal Rule of Civil Procedure 26(b), which allows parties to obtain discovery that is relevant to the parties' claims and defenses. Discovery would have to be re-opened and the case would have to essentially start over—after discovery has already been extended three times for a total of 210 *additional* days of discovery. Order, ECF No. 37 at 3 (granting a 120-day extension to the discovery deadlines); Order, ECF No. 60 at 4 (granting a 60-day extension to the discovery deadlines); Order, ECF 63 at 4 (granting a 30-day extension to the discovery deadlines). The court already notified the parties that after three extensions, no further extensions would be granted. Order, ECF No. 63 at 5 (stating "NO FURTHER EXTENSIONS WILL BE GRANTED").

In sum, Alexander is culpable for untimely filing his answer and cross/counterclaim; Alexander failed to allege facts sufficient to establish any meritorious defense; and setting aside

1  the default would prejudice Admiral, RSG Specialty, GEFB, and NBS. Even after multiple

2  opportunities, Alexander has failed to show that there is good cause for his untimeliness.

3      **B.  Alexander failed to explain why I should allow him to untimely bring cross**

4          **and/or counterclaims.**

5          Rule 12(a)(1)(B) requires that a party "serve an answer to a counterclaim or crossclaim

6  within 21 days after being served with the pleading that states the counterclaim or crossclaim."

7  Fed. R. Civ. P. 12(a)(1)(B). "Although not provided for in Rule 12(f), an answer (or other

8  pleading) filed beyond the time permitted by the Federal Rules of Civil Procedure may be

9  'stricken' as untimely if the pleader failed to obtain from the court an extension of time or leave

10  to late-file the pleading." *Barefield v. HSBC Holdings PLC*, 2019 WL 918206, at *2 (E.D. Cal. Feb. 25,

11  2019) (quoting *Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial* Ch. 9-G at 9:374.1 (Mar. 2018)). As

12  recognized by another court in this circuit, "Rule 12(f) does not "neatly cover" the striking of

13  material that is considered "untimely" but otherwise does not contain anything "redundant,

14  immaterial, impertinent, or scandalous." *Barefield*, 2019 WL 918206, at *2. As a result, courts

15  resolve motions to strike untimely cross/counterclaims under the framework set forth in Federal

16  Rule of Civil Procedure 55.

17          Alexander's response fails to address any reason why I should allow his untimely cross

18  and counterclaims to move forward despite the clear language of Rule 12(a)(1)(B), and further

19  fails to address relevant factors set forth in Rule 55(a). Instead, his entire argument regarding his

20  counter/crossclaims consists of the following:

21          All counterclaims that are not compulsory are "permissive." Permissive
            counterclaims are claims that do "not aris[e] out of the transaction or occurrence
22          that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(b). To
            the extent the counterclaims and crossclaims are also affirmative defenses, their
23          dismissal is improper. To the extent the counterclaims and crossclaims go beyond
            affirmative defenses to the declaratory claim brought by Admiral, and they are
24          dismissed because they are seen as not proper in this litigation, it will only result
            in the claims being brought in a separate action that could then be possibly
25          consolidated or not but that would not be judicially efficient.

26

ECF No. 134 at 9.[5] Alexander fails to include points and authorities in support of his argument, and argument alone does not provide satisfactory reasons or explanations as to why I should allow his cross/counter claims to move forward. This brief argument alone is particularly uncompelling given that allowing his untimely cross/counter claims to move forward would essentially force this action to start afresh.

Even liberally construing Alexander's response as a motion to extend time, it fails because Alexander did not address excusable neglect (necessary for a motion filed after the expiration of a deadline) or address good cause under Rule 16 (necessary to modifying a scheduling order).[6] *See generally id.* Further, it is well established that district courts have the authority to dismiss an action based on a party's failure to obey a court order. Fed. R. Civ. P. 41(b); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order). Alexander's untimely filing violated the scheduling order setting the deadline for adding new parties by adding NBS and RSG Specialty after the deadline. Order, ECF No. 25.

### C. Alexander failed to explain why sanctions should not be issued.

"Where the sanction results in default, the sanctioned party's violations must be due to the 'willfulness, bad faith, or fault' of the party." *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003) (citing *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994); *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1341 (9th Cir. 1985)). "Disobedient conduct not shown to be outside the

---

[5] According to his response, Alexander seemingly suggests dismissal of his cross/counterclaims will not hinder his ability to pursue them in a separate action, which if occurs, would allow for resolution on the merits and proper discovery. The court notes however that negligence claims are subject to a two-year statute of limitations. NRS 11.190(4)(e).

[6] Once a scheduling order is issued, Rule 16 of the Federal Rules of Civil Procedure sets the standard for modifying the schedule. Rule 16 requires "good cause" and a "judge's consent" to modify a scheduling order. F.R.C.P. 16(b)(4). "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). Carelessness is not the same as diligence and offers no basis for relief. *Id.* "If that party was not diligent, the inquiry should end." *Id.* The court already found that Alexander failed to demonstrate diligence: "No meaningful argument is presented that Defendant Alexander's choice to ignore this case for a year (and his related failure to afford himself of the opportunity to conduct discovery during that year) could possibly constitute a showing of diligence. Such circumstances would appear on their face to show the opposite." Order, ECF No. 69 at 2.

control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Id*. (quoting *Hyde & Drath*, 24 F.3d at 1166).

Here, Alexander's conduct was within his control. As discussed above, Alexander was properly served and failed to submit a timely cross/counter claim. Even if Alexander did not become aware of this action until late February or early March of 2023, it was his own doing to fail to appear until the last day of discovery, months after his answer was due. Thus, I find that Alexander acted willfully.

Further, Alexander's "explanation" as to why sanctions should not be issued fails. He contends "there has been no willfulness, bad faith or fault" on his part, and that he is an unsophisticated consumer against a significant foe in the insurance industry.[7] ECF No. 134 at 10. These arguments do not address any of the factors I must consider before issuing sanctions. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (listing factors).

Courts within the Ninth Circuit consider five factors to determine whether terminating sanctions are warranted: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Id.* at 1096.

The first two factors favor sanctions here. The Ninth Circuit has explained that "[t]he public's interest in expeditious resolution of litigation always favors dismissal." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002). This action has been pending since January of 2022. Compl., ECF No. 1. Discovery was initially scheduled to close on August 23, 2022, Order, ECF No. 25 at 2, but remained open until March 22, 2023, Order, ECF No. 65. And it was not until

---

[7] This response also causes the court to question Christensen's loyalty to both Alexander and Kabul given he is also Kabul's counsel. Order, ECF No. 50. Counsel is reminded of his professional responsibility obligations. *See* Nevada Rules of Professional Conduct 1.3 (Diligence); 1.7 (Conflict of Interest: Current Clients).

after Judge Koppe denied the fourth request to extend discovery (Order, ECF No. 65) that Alexander decided to appear in this action, represented by Kabul's counsel, who has been active in this action since February 2022 (ECF No. 9). ECF No. 66.

Further, allowing the cross/counter claims to stand would force reopening discovery for the newly added parties, further delaying this action. Stated otherwise, allowing the cross/counter claims to stand would result in the denial of expeditious resolution of this litigation. Had Alexander complied with the scheduling order, in particular, the deadline to add new parties, he would not be in this position. The "[o]rderly and expeditious resolution of disputes is of great importance to the rule of law." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006). "By the same token, delay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process." *Id.* "Where a court order is violated, the first two factors support sanctions." *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990); *see also Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004) (""Where a court order is violated, the first and second factors will favor sanctions...."). And such delay interferes with the court's management of its docket and wastes judicial resources. The court has had to review several motions, oppositions, and replies related to the untimely answer/cross/counterclaims. *See, e.g.*, ECF Nos. 72; 73; 79; 82; 90; 97; 99; 107; 110; 112; 117; 118; 121; 122; 123; 124; 134; 135; 136; 137. Thus, the first and second factors favor sanctions.

The third factor, risk of prejudice to the parties seeking sanctions, also favors sanctions. "A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case." *In re Phenylpropanolamine (PPA)*, 460 F.3d at 1227 (quoting *Adriana Int'l Corp.*, 913 F.2d at 1412). Here, Alexander's action prejudices Admiral, GEFB, NBS, and RSG Specialty. The prejudice is especially poignant for NBS and RSG Specialty as they are being brought into an action that is essentially trial ready, with discovery

and dispositive motions completed. Any additional time spent waiting for Alexander to litigate will continue to draw out this case that has already been delayed since 2022.

The fourth factor, the public policy favoring the disposition of cases on the merits, weighs against sanctions. *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (internal citation omitted). However, this factor does not outweigh the other factors favoring sanctions in this case.

The fifth factor, the availability of less dramatic sanctions, "involves consideration of three subparts: whether the court explicitly discussed alternative sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of dismissal." *Valley Eng'rs Inc. v. Electric Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998) (internal citation omitted). Here, Alexander was warned of the possibility of dismissal in my show cause order. Order, ECF No. 133 at 4 (explaining that a sanction for untimeliness can be imposed as part of a court's inherent power). Therein, I also explained to Alexander that his untimely answer is essentially a motion for entry of default under Rule 55 and is analogous to a motion to vacate a default and gave him the opportunity to show cause why sanctions should not be issued for failing to timely file an answer and explain why he should be permitted to untimely bring cross and/or counter claims. *Id.* For the reasons discussed *supra*, Alexander failed to do so. The court notes that while Alexander listed the five factors courts consider in determining whether sanctions are appropriate, he proffered no argument as to whether the factors are satisfied here. This factor weighs in favor of sanctions, but only slightly, as the court did not discuss the possibility of other sanctions.

Thus, after balancing all the factors, the court finds they weigh in favor of sanctions. Alexander failed to show: (1) why I should refuse to set aside the default; (2) why he should be allowed to untimely bring cross and/or counterclaims; and (3) why sanctions are not warranted. Accordingly, I find that there is a sufficient basis to strike Alexander's untimely answer and cross/counter claim.

**III.    Conclusion**

IT IS HEREBY ORDERED that Alexander's answer and cross/counterclaim **[ECF No. 66] is STRICKEN**.

IT IS FURTHER ORDERED that the show-cause order issued against Alexander **[ECF No. 133] is DISCHARGED**.

IT IS FURTHER ORDERED that NBS and RSG Specialty are dismissed from this action. Accordingly, RSG Specialty's motion to dismiss **[ECF No. 117] is denied as moot**.

Dated: August 1, 2024

_____
Cristina D. Silva
United States District Judge