# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Admiral Insurance Company, | Case No. 2:22-cv-00177-CDS-NJK |
| Plaintiff | **Order Resolving Pending Motions for Summary Judgment** |
| v. | |
| Kabul, Inc., et al., | [ECF Nos. 79, 126, 128] |
| Defendants | |

Plaintiff Admiral Insurance Company brings this declaratory action against Kabul Inc., d/b/a Fastrip PWC Rentals and Kabul Inc, d/b/a Fastrip Food Store (collectively, "Kabul"), and the Lynch Defendants: Darryl Alexander, Tommy Lynch[1] and April Black. *See* Compl., ECF No. 1.

This insurance dispute is enshrouded in tragedy. It involves the tragic deaths of Tammy Lynch and David Raper. Tammy lost her life in a fatal jet ski accident. The jet ski was owned by defendant Kabul Inc., who rented the jet ski to defendant Darryl Alexander. The Lynch Action[2] was filed as a result. Compl., ECF No. 1 at ¶¶ 1, 22. David Raper tragically lost his life to Covid-19. David's role in this action is significant: the third-party-complaint spins on whether Kabul delivered a list of purchased jet skis to Gregg Eidsness Farm Bureau Financial Services (GEFB) through David. The timing of the purported delivery of the list, during the Covid-19 pandemic in 2020, and close in time to David's death, who was the only GEFB employee at the time due to Covid-19,[3] raises questions about if and when delivery occurred, which is the center of Kabul's action against GEFB.

---

[1] Tommy Lynch is the administrator of the estate of Tammy Lynch.

[2] The separate action is 2:21-cv-01981-ART-DJA.

[3] *See* Dec. 1, 2021 Email, Pl.'s Ex. 5, ECF No. 128-7 at 2 ("At the time all of this took place our office was down to one employee due to Covid. That one employee has since died due to Covid.")

This order addresses the pending motions for summary judgment. ECF Nos. 79 (GEFB); 126 (Kabul and Alexander); 128 (Admiral). On July 17, 2024, I held a hearing on Kabul, Alexander, and Admiral's motions. *See generally* July 17, 2024 Hr'g Tr.[4] After careful consideration, I deny GEFB's motion for summary judgment, deny Kabul and Alexander's motion for summary judgment, and grant Admiral's motion for summary judgment.

## I.   Background

### A.   The Lynch Action

Kabul Inc. owns Fastrip Food Store, a convenience store, gas station, and jet ski rental business, located in Bullhead City, Arizona. Noori Dep., Def.'s Ex. 1, ECF No. 79-1 at 5. On August 21, 2020, a jet ski owned by Kabul and rented to Alexander was involved in a fatal accident, resulting in the Lynch Action, where Kabul is a named defendant. Compl., ECF No. 1 at ¶¶ 1, 22. After being sued, Kabul submitted a claim to Admiral for coverage under their May 22, 2020–May 22, 2021 insurance policy (hereinafter, "2020 Policy"). Baratti Decl., ECF No. 128-1 at ¶ 6.

### B.   The 2020 Policy

The Admiral insurance policy at issue in this action, provided Kabul insurance from May 22, 2020 to May 22, 2021. 2020 Policy, Pl.'s Ex. 1, ECF No. 128-3 at 5. The 2020 Policy contains exclusion g., which precludes coverage for watercrafts. *Id*. at 12. However, the 2020 Policy contains endorsements that expand coverage to watercrafts. The specified operations endorsement that covers "jet ski rental" provides that the insurance "applies only to 'bodily injury', 'property damage', 'personal and advertising injury' and medical expenses caused by the operations shown in the Schedule." *Id*. at 50. The boats endorsement contains a similar provision, providing that **exclusion g. "does not apply to any watercraft owned or used by or**

---

[4] After the hearing, Kabul and Alexander filed a supplement in support of their arguments made at oral argument. ECF No. 141. Admiral objects and moves to strike the supplement. ECF No. 143. Because the supplement contains the same arguments from Kabul and Alexander's pleadings without citations to the record, I strike the supplement as duplicative.

**rented to the insured shown in the Schedule."** *Id.* at 32 (emphasis added). Said differently, the jet ski rental must be listed on a schedule of jet skis on file with Admiral pursuant to the boats endorsement in order for exclusion g. *not* to apply.

### C. The schedules on file with Admiral

Admiral senior claims superintendent Stacie Baratti was assigned to investigate the Kabul claim. *See generally* Baratti Decl., ECF No. 128-1. She found that the jet ski involved in the Lynch Action is registered under the identification number YAMA3877C020. Dec. 1, 2021 Email, Pl.'s Ex. 5, ECF No. 128-7 at 10 (showing jet ski purchases on June 25, 2020); *see also* Baratti Decl., ECF No. 128-1 at ¶¶ 8–9. The 2020 Policy underwriter informed Baratti that Kabul had no schedule on file for the 2020 Policy. Baratti Decl., ECF No. 128-1 at ¶ 10; *see also* Baratti Dep. Vol. II, Pl.'s Ex. 3, ECF No. 127-4 at 4. However, there was a schedule of 40 jet skis on file for the 2019–2020 policy, but the jet ski involved in the Lynch Action was not on that schedule. Baratti Decl., ECF No. 128-1 at ¶ 10; *see generally* 2019–2020 schedule, Pl.'s Ex. 3, ECF No. 128-5.

Baratti then emailed GEFB to discuss the schedule. Baratti Decl., ECF No. 128-1 at ¶ 11. GEFB informed Baratti that Kabul "always" provided it with copies of new jet ski registrations every year, as well as a list of jet skis to be removed. Dec. 1, 2021 Email, Pl.'s Ex. 5, ECF No. 128-7 at 2. GEFB further informed Buratti that Kabul provided GEFB with jet ski registrations for the jet skis it purchased on May 8, 2020, June 11, 2020, and June 25, 2020. *Id.* There is no dispute that jet skis purchased on May 8 and June 11 were received by Admiral. *Id.* GEFB informed Buratti that Kabul "sw[ore] that [it] provided [GEFB] employee [David Raper] with the invoice and registrations" for the jet skis purchased on June 25—but there is no proof of delivery. *Id.*; *see also* Baratti Decl., ECF No. 128-1 at ¶ 12. David unfortunately passed away prior to litigation and GEFB could "no longer access [David's] computer emails or records as to how the transaction was handled." Dec. 1, 2021 Email, Pl.'s Ex. 5, ECF No. 128-7 at 2; *see also* Baratti Decl., ECF No. 128-1 at ¶ 12.

GEFB provided Buratti with the list of jet skis purchased on May 8, June 11, and June 25, 2020. Baratti Decl., ECF No. 128-1 at ¶ 12; *see also* Dec. 1, 2021 Email, Pl.'s Ex. 5, ECF No. 128-7 at 4–12. Baratti reviewed the lists and confirmed that the list of jet skis purchased on June 25, 2020 (hereinafter, the "June 25 jet ski list") had not been provided to Admiral prior to the date of Tammy's accident. Baratti Decl., ECF No. 128-1 at ¶ 12; *see also* Dec. 1, 2021 Email, Pl.'s Ex. 5, ECF No. 128-7 at 4–12. Baratti also reviewed the list of jet skis that were provided for the policy period of May 22, 2021 to May 22, 2022. Baratti Decl., ECF No. 128-1 at ¶ 13. That list contained jet skis purchased in 2020 and 2021 but did not include the June 25 jet ski list. *Id.*; *see also* Renewal policy schedule, Pl.'s Ex. 6, ECF No. 128-8. Admiral considered all of the lists on file to determine if coverage was available to Kabul. Baratti Decl., ECF No. 128-1 at ¶¶ 10–13.

### D.  The instant action

Admiral, Kabul's insurance provider, provided Kabul and GEFB with a Reservation of Rights Letter signed by Admiral senior claims superintendent Stacie Baratti. *See* Reservation of Rights Letter, Def.'s Ex. 2, ECF No. 79-2. In that letter, Admiral agreed to defend Kabul and Alexander in the Lynch Action, but stated that the jet ski involved in the Lynch Action "was not on any schedule on file with Admiral at the time of the Lynch accident or anytime during the effective dates of the Policy." *Id.* at 11. Admiral also asked Kabul to provide any information that it had to show that that jet ski was on the schedule with Admiral on or before the date of the accident, as it "would be new information" that "could lead to a different coverage decision." *Id.* at 3. The letter further stated that "Admiral reserve[d] the right to seek a judicial determination of what coverage, if any, is afforded for [Kabul] under the Policy for the claims made and damages alleged in the *Lynch* [Action], including Admiral's obligation to provide a defense." *Id.* at 12. Admiral then filed the instant declaratory judgment, seeking a determination on whether it has a duty to defend and indemnify Kabul and Alexander. *Id.*

Kabul answered the complaint and brought a third-party action against GEFB. ECF No. 14. The third-party-complaint contains one claim for relief: negligence. ECF No. 14 at ¶¶ 9–17.

Kabul alleges that GEFB is negligent for failing to provide Admiral with the June 25 jet ski list, which included the jet ski involved in the Lynch Action. *Id.* Kabul also alleges that GEFB's negligence resulted in Kabul having to defend himself in the instant declaratory action brought by Admiral, thereby causing Kabul to face "the threat of imminent loss of insurance coverage for the defense and coverage as to any damages associated with the Lynch [Action]." *Id.* at ¶ 11.

E.   **The motions for summary judgment**

GEFB filed a motion for summary judgment, arguing that Kabul is unable to meet his burden to prove that GEFB was negligent, as there is no proof that Kabul gave GEFB the June 25 jet ski list to Admiral so the jet skis on that list, including the jet ski involved in the Lynch Action, were not added to Kabul's schedule for coverage. *See generally* ECF No. 79; 98. Kabul argues that summary judgment is not appropriate since "the burden does not even shift to Kabul because [GEFB] cannot present evidence that entitles it to judgment as a matter of law." ECF No. 90 at 5. Specifically, Kabul argues that there is a genuine dispute of material fact as to principal and director of Kabul, Inc, Nijibullah Noori's,[5] recollection of the June 25 jet ski list delivery. *Id.*

Kabul and Alexander filed a motion for summary judgment, arguing that Admiral "fraudulently brought this declaratory relief action to avoid its duty to defend and indemnify" them in the Lynch Action. ECF No. 126 at 2. Kabul and Alexander argue that "[s]ummary judgment should be granted in [their] favor [] because the face of the policy grants coverage; and, even if [Admiral] alleges ambiguities in an attempt to restrict coverage, those must be construed in favor of the insured and coverage." *Id.* at 3.

Admiral also filed a motion for summary judgment, arguing that there is no dispute of material fact that it has no duty to defend or indemnify Kabul or Alexander in the Lynch Action because the jet ski involved in the accident was not on file with them, nor included in the required schedule. *See generally* ECF No. 128.

---

[5] Noori was identified by Kabul's counsel as its designated 30(b)(6) witness.

II.      **Legal standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp.*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018). "When simultaneous cross-motions for summary judgment on the same claim are before the court, the court must consider the appropriate evidentiary material identified and submitted in support of"—and against—"both motions before ruling on each of them." *Tulalip Tribes of Washington v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (citing *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1134 (9th Cir. 2001)).

III.     **Discussion**

A.  **Arizona law applies**

Federal courts apply the choice-of-law rules of the state courts in the district where the federal court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941). Nevada has adopted the Restatement (Second) of Conflicts of Laws. *Golden Bear Ins. Co. v. Evanston Ins. Co.*, 564 F. Supp. 3d

922, 927 (D. Nev. 2021). It requires the application of the "'local law of the state where the injury occurred' unless 'some other state has a more significant relationship' to the occurrence under the principles stated in section 6 [of the Restatement (Second) of Conflict of Laws]." *General Motors Corporation v. Eighth Judicial Dist. Court*, 134 P.3d 111, 117 (Nev. 2006).

"Section 193 of the Restatement (Second) of Conflict of Laws indicates a more specific principle for contracts of liability insurance, indicating that 'the validity of [such a] contract and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy. . . .'" *Golden Bear Insurance*, 564 F. Supp. 3d at 927 (quoting Restat. 2d of Conflict of Laws, § 193 (2nd 1988)). Nevada courts have found this rule "is rational because 'the principal location of the risk and costs of the policy were probably established according to' the law of the state where the insured risk was located." *Id.* (quoting *Sotirakis v. United Serv. Auto. Ass'n*, 787 P.2d 788, 791 (Nev. 1990)).

Here, the 2020 Policy was issued to Kabul in Arizona and Kabul is located in Arizona. 2020 Policy, Pl.'s Ex. 1, ECF No. 128-3 at 5; Noori Dep., Def.'s Ex. 1, ECF No. 79-1 at 5. There is no dispute that Kabul and GEFB's relationship is based in Arizona. *See* ECF Nos. 79; 89. And the jet ski involved in the Lynch Action was registered in Arizona and the accident occurred in Arizona. *See* YAMA3877C020 Arizona watercraft certificate of number, Pl.'s Ex. 2, ECF No. 128-4 at 4. Therefore, Arizona law applies.

### B.   GEFB's motion for summary judgment is denied

Kabul's third-party-complaint alleges Kabul had "the practice and custom" to provide GEFB with a paper copies[6] of "the updated list of jet skis for the insurance policies" and that both GEFB and Admiral "were aware of this practice and custom." Third-party-complaint, ECF No. 14 at ¶ 7. Kabul alleges that it provided David with the June 25 jet ski list, which was

---

[6] Kabul's response to Interrogatory No. 2 stated that Kabul communicated with David in person and "provided paper copies of documentation in person at the [GEFB] business location." Kabul's responses to interrogatories, Def.'s Ex. 3, ECF No. 79-3 at 4.

1   "pursuant to the policy and custom," and "David and the other employees at [GEFB]. . .
2   negligently failed to provide the updated information to [Admiral] before the tragic Lynch
3   accident[.]" *Id.* at ¶ 7.

4         To succeed on a negligence claim, the plaintiff must show that the defendant owed the
5   plaintiff a duty, breach of that duty, causal connection between the defendant's conduct and the
6   resulting injury and actual damages. *Diaz v. Phoenix Lubrication Serv., Inc.*, 230 P.3d 718, 721 (Ariz.
7   Ct. App. 2010). Negligence must be proven by a preponderance of the evidence. *Harvest v. Craig*,
8   990 P.2d 1080, 1082 (Ct. App. 1999). "The burden of proving negligence rests upon the plaintiff,
9   and it is not incumbent upon the defendant to prove an absence thereof." *Berne v. Greyhound Parks*
10  *of Arizona, Inc.*, 448 P.2d 388, 389 (1968).

11        GEFB moves for summary judgment in its favor, arguing that Kabul failed to meet its
12  burden to prove that GEFB was negligent. *See generally* ECF No. 79. Namely, GEFB argues that
13  Kabul failed to demonstrate by a preponderance of the evidence that it actually delivered the
14  June 25 jet ski list to David or GEFB, and absent such evidence, there is no way to establish that
15  GEFB breached the duty to provide that list to Admiral. *Id.*

16        Kabul's owner and 30(b)(6) representative Najibullah Noori stated that either he or
17  Kabul's manager, Haroon Hakimi, delivered the June 25 jet ski list to David. Kabul's
18  interrogatory responses, Def.'s Ex. 3, ECF No. 79-3 at 4. But Noori later testified that Hakimi
19  actually delivered the list. Noori Dep., Def.'s Ex. 1, ECF No. 79-1 at 40–42. Noori also testified
20  that only he and Hakimi would know whether the list in question was dropped off with David.
21  *Id.* at 53. So that means that there are three individuals who can possibly speak to delivery:
22  David, Noori, or Hakimi.

23        Unfortunately, David lost his life to Covid-19. There is no way to know, from David's
24  perspective, whether Hakimi delivered the relevant updated jet ski list to GEFB on or before the
25  accident. However, GEFB's 30(b)(6) witness Stefany Hawk explained that if David had received
26  an updated list of jet skis, typical company procedure would be for him to "have faxed it in to

brokerage and then kept it with his paperwork" before placing it "into [GEFB's] file." Hawk Second Session Dep., Def.'s Ex. 7, ECF No. 79-7 at 35. GEFB's other 30(b)(6) witness, Greg Eidsness, explained that despite a search of GEFB's files and David's computer and his home, GEFB was unable to locate any information or documents that supported the allegation that Kabul delivered the updated list of jet skis to GEFB. Eidsness Dep., Def.'s Ex. 8, ECF No. 79-8 at 4–5 ("[GEFB] looked in the files where [David] stored his records" and "verified that there were no more records at his house." After searching David's files, GEFB "couldn't find anything related" to the June 25 jet ski list that Kabul allegedly dropped off with David.)

Noori explained that Kabul's normal practice was to purchase jet skis, register the newly purchased jet skis with "Arizona Fish and Game," and submit a copy of the registrations to GEFB. Noori Dep., Def.'s Ex. 1, ECF No. 79-1 at 28, 38, 40. Noori stated that Kabul provided GEFB with a list of registered jet skis "[e]very year" as a company policy, regardless of whether GEFB asked for the list. *Id.* at 39. Noori further stated that Hakimi was responsible for jet ski documentation and registration and would have been the only Kabul employee to deliver such documentation to GEFB. *Id.* at 40–41. As Kabul's 30(b)(6) witness, Noori was required to "testify about information known or reasonably available to the organization," including Topic 19 of the 30(b)(6) Notice: the "alleged delivery of an 'updated jet ski list' to Eidsness' employee David in June 2020." Notice of 30(b)(6) dep., Def.'s Ex. 4, ECF No. 79-1 at 7. Noori failed to do so. He testified that he had not discussed the alleged delivery with Hakimi prior to testifying or answering interrogatory questions because he did not want any of his employees to know Kabul was involved in a lawsuit and "just want[ed] to keep it as quiet as possible." *Id.* at 42. Noori stated that his answers were "based off [his] memory" and past conversations he had with Hakimi. *Id.* at 42. Noori could not recall how many lists of registered jet skis Hakimi delivered to GEFB in the summer of 2020, but knew it was more than one list. *Id.* When asked whether he recalled "having three separate conversations with [Hakimi] saying, 'Did you drop that off,' and him saying, 'Yes'?", Noori answered in the affirmative. *Id.* However, when pressed on whether he

had "an independent memory of four separate times that [he] asked [Hakimi] if he had taken in lists and he said yes[,]" Noori admitted that he only had a general memory of Hakimi delivering multiple list at different times over the summer of 2020. *Id.* at 42. Noori claimed to "remember" that the jet ski rented by Alexander was "[on] the very last list because of the date of registration." *Id.* at 43. But he later clarified that he made that realization after Kabul received the Reservation of Rights letter from Admiral; he cross referenced the jet ski number and realized that the jet ski in question was among the last group of jet skis Kabul purchased that summer, and that the jet ski was not on schedule with Admiral. *See id.*

In opposition to the motion, Kabul argues that Noori's statements are sufficient to prove that Hakimi delivered the June 25 jet ski list to GEFB. ECF No. 90 at 6. However, at best, Noori's statements establish that Hakimi was responsible for delivering the list of newly purchased jet skis to GEFB. But Noori's testimony regarding delivery is nothing more than a pronouncement, unsupported by evidence, that he believed Hakimi delivered the June 25 jet ski list to GEFB. This leaves only Hakimi's recollection of delivery, which is not presently before the court. It is unclear why Noori decided not to discuss the matter with Hakimi or why Kabul elected to forego submitting a statement from Hakimi into evidence. This is a major gap in evidence to support Kabul's motion, especially since he is the only other person beside Hakimi who could give clarity regarding the delivery.

But, summary judgment for a defendant is appropriate when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The element essential to Kabul's argument here is duty—if Kabul provided GEFB with the June 25 jet ski list, then GEFB would have a duty to provide that list up the chain to Admiral. Kabul argues that there remains a genuine issue of fact on whether Kabul provided the June 25 jet ski list to GEFB based on Noori's recollection of delivery. ECF No. 90 at 5. While there is no additional evidence to corroborate Noori's version of events (that Hakimi provided GEFB with the June 25 list), "[a]

judge must not grant summary judgment based on [their] determination that one set of facts is more believable than another." *Nelson v. City of Davis*, 571 F.3d 924, 929 (9th Cir. 2009). Whether to believe Noori's inconsistent version of delivery or GEFB's version that no delivery occurred "is just the type of credibility determination that must be left to the factfinder[ ] and not made by a judge on summary judgment." *Id.* Accordingly, GEBF's motion for summary judgment is denied. A jury will decide whether Noori's version of events is believable, or not.

### C. Kabul and Alexander's motion for summary judgment is denied and Admiral's motion for summary judgment is granted

As discussed above, it is undisputed that the jet ski involved in the Lynch Action was not on any schedule of jet skis on file with Admiral. Kabul and Alexander argue that Admiral still has a duty to defend and indemnify them because ambiguity in the 2020 Policy must be construed in favor of coverage. *See generally* ECF No. 126.[7] Admiral argues that it is entitled to summary judgment because there is no coverage for Kabul, which means there is no duty to defend and indemnify Kabul and Alexander. *See generally* ECF No. 128.

#### 1. *The insurance policy is not ambiguous*

"An insurance policy 'must be read as a whole, so as to give a reasonable and harmonious effect to all of its provisions.'" *Nat'l Fire Ins. Co. v. James River Ins.*, 162 F. Supp. 3d 898, 903 (D. Ariz. 2016) (quoting *Charbonneau v. Blue Cross*, 634 P.2d 972, 975 (Ariz. Ct. App. 1981)). Courts must "'construe the written terms of [the policy] to effectuate the parties' intent,' and 'to protect the reasonable expectations of the insured.'" *Id.* at 904 (quoting *Liberty Ins. Underwriters, Inc. v. Weitz Co.* 158 P.3d 209, 212 (Ariz. Ct. App. 2007)). In doing so, "the Policy's language 'must be viewed from the standpoint of the average layman who is untrained in the law or the field of insurance.'" *Id.* (quoting *Liritis v. Am. Family Mut. Ins. Co.*, 61 P.3d 22, 25–26 (Ariz. Ct. App. 2002)). A policy

---

[7] Kabul and Alexander's motion contains a section titled "Further application of the above law to these facts and analysis." ECF No. 126 at 13–19. This section is bereft of any points or authorities so is not considered in resolving this motion. *See* LR 47-3.

term is ambiguous if it is susceptible to two or more reasonable interpretations that conflict. *Teufel v. Am. Family Mut. Ins. Co.*, 419 P.3d 546 (Ariz. 2018).

Kabul and Alexander argue that the 2020 Policy endorsement for boats and exclusion g. is ambiguous and ask the court to interpret it to mean that jet skis are not excluded under exclusion g., thereby granting coverage for all jet skis owned by Kabul. ECF No. 126 at 11. There are two problems with this argument. First, Kabul and Alexander fail to explain how either endorsement is ambiguous. Second, even if the boats endorsement or exclusion g. do not apply, the specified operations endorsement clearly states that policy coverage is limited to jet skis on schedule.

There is nothing ambiguous about the boats endorsement. It clearly indicates that it applies to certain watercraft, that is, it provides coverage to jet skis on the schedule with Admiral. 2020 Policy, Pl.'s Ex. 1, ECF No. 128-3 at 32. It also clearly states that section I of exclusion g. "does not apply to any watercraft owned or used by or rented to the insured shown in the Schedule." *Id.* Exclusion g. is not ambiguous. It clearly states that "watercraft owned or operated by or rented or loaned to any insured" is not covered under the policy.[8] *Id.* at 10, 12. In other words, exclusion g. excludes jet skis from coverage under the policy; jet skis are only covered through endorsements, including the boats endorsement, that expand coverage to watercraft on schedule with Admiral. *Id.* at 32. Even if the boats endorsement or exclusion g. do not apply, the specified operations endorsement clearly states that there is only insurance coverage for jet ski operations on schedule with Admiral. *Id.* at 50.

Kabul and Alexander also argue that the rules of contract interpretation require a reading of exclusion g. that results in coverage, not exclusion, of all jet skis. ECF No. 126 at 13. Under Arizona law,[9] the interpretation of a contract is a question of law. *Rand v. Porsche Fin.*

---

[8] Exclusion g. does not apply to watercraft that the insured does *not* own, but that is not an issue here because there is no dispute that Kabul owned the jet ski in question. *See* 2020 Policy, Pl.'s Ex. 1, ECF No. 128-3 at 12; *see also* Jet ski purchases, Pl.'s Ex. 5, ECF No. 128-7 at 10.

[9] Kabul and Alexander erroneously use Nevada case law to support this argument. *See* ECF. No. 126 at 12.

*Servs.,* 167 P.3d 111, 121 (Ariz. Ct. App. 2007). "A general principle of contract law is that when parties bind themselves by a lawful contract, the terms of which are clear and unambiguous, a court must give effect to the contract as written." *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.,* 138 P.3d 1210, 1213 (Ariz. Ct. App. 2006). And "'[w]here the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto.'" *Mining Inv. Grp., L.L.C. v. Roberts,* 177 P.3d 1207, 1211 (Ariz. Ct. App. 2008) (quoting *Goodman v. Newzona Inv. Co.,* 421 P.2d 318, 320 (1966)). All Kabul and Alexander write to support their position is: "This is the only reasonable reading because if the page is read how ADMIRAL suggests, the result is that KABUL, INC. paid over $30,000 for no coverage on any of its jet skis even though it was purchasing the 2020 policy of insurance to cover its specified operation of its jet ski rental business." ECF No. 126 at 13. This is a conclusory statement, lacking in any analysis explaining how exclusion g. is ambiguous. The policy unambiguously states that jet skis on schedule with Admiral *are covered.* I must give effect to the policy as it is written: jet skis are excluded from coverage under exclusion g., but endorsements provide coverage to jet skis that are on schedule with Admiral. The evidence shows that the underwriting file contained a list of 40 jet skis on file with Admiral from the 2019–2020 policy. *See* 2019–2020 schedule, Pl.'s Ex. 3, ECF No. 128-5. And the renewal policy for 2021–2022 contained a list of jet skis purchased in 2020 and 2021, but the jet ski rented to Alexander that was involved in the Lynch Action is not on that list. *See* Renewal policy schedule, Pl.'s Ex. 6, ECF No. 128-8.

### 2.  Admiral has no duty to defend Kabul in the Lynch Action

A liability insurer's duty to defend generally arises "'[i]f the complaint in the action . . . upon its face alleges facts which come within the coverage of the liability policy.'" *Quihuis v. State Farm Mut. Auto. Ins. Co.,* 334 P.3d 719, 727 (Ariz. 2014) (quoting *Kepner v. W. Fire Ins. Co.,* 509 P.2d 222, 224 (1973)). However, in Arizona there is no absolute duty to defend when "'the alleged facts [in the complaint] ostensibly bring the case within the policy coverage but other facts

which are not reflected in the complaint plainly take the case outside the policy coverage.'" *Id.* (quoting *Kepner*, 509 P.2d at 224). "An insurance policy 'must be read as a whole, so as to give a reasonable and harmonious effect to all of its provisions.'" *National Fire Ins. Company of Hartford*, 162 F. Supp. 3d at 903 (quoting *Charbonneau v. Blue Cross*, 634 P.2d 972, 975 (Ariz. Ct. App. 1981)). And, the court must "'construe the written terms of [the policy] to effectuate the parties' intent,' and 'to protect the reasonable expectations of the insured.'" *Id.* at 904 (quoting *Liberty Ins. Underwriters, Inc.*, 158 P.3d at 212).

Kabul argues that Admiral has a duty to defend and breached that duty by filing the instant action because both Kabul and Alexander's "alleged liability under the Lynch Complaint are entitled to coverage based upon the clear language of the 2020 policy." ECF No. 126 at 12. Admiral counters that it has no duty to defend Kabul or Alexander because the jet ski used in the Lynch Action was not on any schedule with Admiral, so it is entitled to summary judgment. ECF No. 127 at 12; ECF No. 128 at 13. Specifically, Admiral argues that in interpreting the 2020 Policy as a whole, the jet ski used in the Lynch Action is not covered since it is not on any schedule before August 21, 2020. ECF No. 127 at 12–15; ECF No. 128 at 13–15.

In interpreting the 2020 Policy as a whole, the specified operation endorsement expands coverage to "bodily injury" caused by operations on schedule with Admiral, including jet skis. 2020 Policy, Pl.'s Ex. 1, ECF No. 128-3 at 50. And the boats endorsement requires a jet ski to be on schedule with Admiral to be covered. *Id.* at 32. So, if a jet ski rented by Kabul is on a schedule with Admiral, then exclusion g. does not apply, and Admiral is required to provide Kabul with coverage for that jet ski.

Courts have upheld similar provisions. The Arizona Court of Appeals held that a tractor was not covered under a policy because it was not listed on the policy's schedule. *Harbor Ins. Co. v. United Servs. Auto. Ass'n*, 559 P.2d 178, 181 (Ariz. Ct. App. 1976) ("even assuming the tractor is an automobile, it is not covered by the Harbor policy since it is not one of the vehicles listed on the schedule."). In that case, the court stated that "[t]he scheduling of automobiles is not merely for

the convenience of assessing premiums but it itself a declaration of the limitation of the hazards assumed.'" *Id.* The Second Circuit Court of Appeals similarly found that when a vehicle had to be listed under a policy for coverage and the insured failed to do so, it "was fatal to coverage under the umbrella policy." *Arrowood Indem. Co. v. King*, 699 F.3d 735, 739 (2d Cir. 2012). And the Eleventh Circuit Court of Appeals has likewise concluded that a watercraft was not covered under the policy because it was not listed on a schedule. *Estevez v. N. Assur. Co. of Am.*, 428 F. App'x. 966, 968 (11th Cir. 2011).

Here, upon finding that the jet ski involved in the Lynch Action was not on the 2020 Policy schedule, Admiral's claim adjustor reviewed the schedules for both the preceding policy and subsequent renewal policy. Decl. of Staci Baratti, ECF No. 128-1 at ¶¶ 10-13. As discussed above, GEFB informed Admiral that Kabul purchased jet skis on May 8, 2020, June 11, 2020, and June 25, 2020. Dec. 1, 2021 Email, Pl.'s Ex. 5, ECF No. 128-7 at 2. The registrations for the jet skis it purchased on May 8 and June 11 were sent to Admiral to be added to Kabul's policy. Admiral considered these additions as being part of the schedule for the 2020 policy. The claims adjustor took this action because the 2020 Policy covered any jet ski on file with Admiral, not just jet skis that would have been on the 2020 Policy schedule.[10] But the registration list for the date the jet ski involved in the Lynch Action—the June 25 list—was not provided to Admiral, so it was not considered to be on the schedule. *See* July 17, 2024 Hr'g Tr. at 23:9–24:6; *see also* Decl. of Staci Baratti, ECF No. 128-1 at ¶ 12; *see also* Dec. 1, 2021 Email, Pl.'s Ex. 5, ECF No. 128-7 at 4–12. Kabul was informed that the jet ski involved in the Lynch Action "was not on any schedule on file with Admiral at the time of the Lynch accident or anytime during the effective dates of the Policy" and was asked to provide Admiral with any information showing otherwise. Reservation of Rights Letter, Def.'s Ex. 2, ECF No. 79-2 at 3, 11. Kabul provided no such documentation and

---

[10] At the July 17 hearing, Admiral clarified that the 2020 Policy covered not only the jet skis on (if submitted) a 2020 schedule but "it would include anything that Admiral has on a schedule." July 17, 2024 Hr'g Tr. at 22:17–21. The issue here is that the jet skis purchased on June 25, 2020, which included the jet ski involved in the Lynch Action, was not submitted to Admiral.

Noori testified that Kabul did not have such documentation. Noori Dep., Def.'s Ex. 1, ECF No. 79-1 at 36. Because the jet ski that was involved in the Lynch Action was not listed on *any* schedule with Admiral, exclusion g. applies and excludes the jet ski at issue in the Lynch Action from coverage under the 2020 Policy.

Kabul and Alexander do not dispute that the jet ski at issue in the Lynch Action was not on any schedule on file with Admiral, but instead argue that because there was no schedule for the 2020 Policy, exclusion g. should not apply since it would mean that no jet ski owned by Kabul was covered under the 2020 Policy. ECF No. 132 at 10. However, even with no 2020 Policy schedule, Admiral confirmed that *any* jet ski that was on file at the time of the accident would be covered. *See* July 17, 2024 Hr'g Tr. at 4:2–4. Indeed, Admiral reviewed the schedule for the 2019–2020 policy and the schedule for the 2021–2022 renewal policy to determine if the jet ski at issue was on the schedule. In other words—Admiral reviewed all schedules to determine coverage. Had Admiral received the June 25 jet ski list, it would have been covered under the policy. Consequently, Admiral has no duty to defend Kabul and is entitled to summary judgment as a matter of law.

### 3. *Admiral has no duty to defend Alexander in the Lynch Action*

The boats endorsement clearly provides that coverage is extended to those "legally responsible for the use of any such watercraft" owned by the insured. 2020 Policy, Pl.'s Ex. 1, ECF No. 128-3 at 32. The boats endorsement defines watercraft as jet skis on schedule with Admiral. *Id.* Because the jet ski involved in the Lynch Action was not on any schedule with Admiral, Alexander cannot be deemed an additional insured under the Policy. Therefore, Admiral has no duty to defend and is entitled to summary judgment as a matter of law.

### 4. *Admiral has no duty to indemnify Alexander or Kabul*

"'It is well settled that because the duty to defend is broader than the duty to indemnify, a determination that there is no duty to defend automatically means that there is no duty to indemnify.'" *K.B. ex rel. Kanteiko v. Hartford Cas. Ins. Co.*, 608 F. App'x. 492 (9th Cir. 2015) (quoting

*Certain Underwriters at Lloyd's of London v. Superior Ct.*, 16 P.3d 94, 104 (2001)). Because Admiral has no duty to defend Kabul or Alexander, Admiral has no duty to indemnify Kabul or Alexander.[11]

V.     **Conclusion**

IT IS THEREFORE ORDERED that GEFB's motion for summary judgment **[ECF No. 79] is DENIED**.

IT IS FURTHER ORDERED that Kabul and Alexander's motion for summary judgment **[ECF No. 126] is DENIED** and that Admiral's motion for summary judgment **[ECF No. 128] is GRANTED**.

Dated: August 14, 2024

_____
Cristina D. Silva
United States District Judge

---

[11] Additionally, the 2020 Policy contains a punitive damages exclusion. 2020 Policy, Pl.'s Ex. 1, ECF No. 128-3 at 41. To the extent the Lynch Action sought punitive damages, Admiral's coverage "does not apply to punitive or exemplary damages, in whatever form assessed, awarded against any insured." *Id.*