UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| ADMIRAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>KABUL, INC., d/b/a FASTRIP PWC RENTALS, KABUL INC., d/b/a FASTRIP FOOD STORE, DARRYL PETER ALEXANDER, JR., individually, TOMMY LYNCH, as ADMINISTRATOR for the ESTATE OF TAMMY LYNCH and TOMMY LYNCH and APRIL BLACK, individually as heirs of TAMMY BLACK<br><br>Defendants.<br>______________________________<br>KABUL, INC., d/b/a FASTRIP PWC and FASTRIP FOOD STORE,<br><br>Third-Party Plaintiff,<br><br>Vs.<br><br>GREGG EIDSNESS FARM BUREAU FINANCIAL SERVICES, DOES I through X, inclusive; and ROE CORPORATIONS I through X, inclusive,<br><br>Third-Party Defendant. | Case No. 2:22-cv-00177-CDS-NJK<br><br>Las Vegas, Nevada<br>Wednesday, March 5, 2025<br>10:07 a.m. - 10:37 a.m.<br>Courtroom 6B<br><br>Status and Motion Hearing<br><br>**C E R T I F I E D C O P Y** |

REPORTER'S TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE CRISTINA D. SILVA,
UNITED STATES DISTRICT JUDGE

///
///

COURT REPORTER: Samantha N. McNett, RMR, CRR, CCR
United States District Court
333 Las Vegas Boulevard South, Room 1334
Las Vegas, Nevada 89101
Samantha_McNett@nvd.uscourts.gov

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

* * *

**APPEARANCES**

For the Plaintiff:

**KEVIN STOLWORTHY, ESQ.**
ARMSTRONG TEASDALE, LLP
7160 Rafael Rivera Way, Suite 320
Las Vegas, Nevada 89113
708-678-5070

For the Defendants Kabul, Inc. and Darryl Peter Alexander, Jr.:

**THOMAS CHRISTENSEN, ESQ.**
CHRISTENSEN LAW OFFICES, LLC
1000 S. Valley View Boulevard
Las Vegas, Nevada 89107
702-870-6152

For the Third-Party Defendant Gregg Eidsness Farm Bureau Financial Services:

**BRADLEY TAYLOR, ESQ.**
GORDON REES SCULLY MANSUKHANI, LLP
300 South 4th Street, Suite 1550
Las Vegas, Nevada 89101
702-577-9341

* * *

LAS VEGAS, NEVADA; WEDNESDAY, MARCH 5, 2025; 10:07 A.M.

--oOo--

P R O C E E D I N G S

THE COURTROOM ADMINISTRATOR: This is the time set for status hearing and hearing regarding motion to dismiss, Admiral Insurance Company versus Kabul, Inc., case number 2:22-cv-00177-CDS-NJK.

Counsel, please note your appearance beginning with plaintiff.

MR. STOLWORTHY: Your Honor, Kevin Stolworthy for Admiral Insurance. Good morning.

THE COURT: Good morning.

MR. CHRISTENSEN: Thomas Christensen representing Kabul, Inc.

THE COURT: Good morning.

MR. TAYLOR: And Bradley Taylor representing Gregg Eidsness.

THE COURT: All right. And good morning to you, as well.

All right. We are here on the motion to dismiss that was filed on December 10th essentially arguing that this Court -- not essentially -- arguing that this Court lacked subject matter jurisdiction to resolve the summary judgment motions that I resolved last summer.

In opposition to the motion, plaintiff argues two

things: One, this is a motion for reconsideration that doesn't meet the proper standard; and, two, that the case law is dispositive and that I, in fact, did have subject matter jurisdiction over this case at the time that I ruled on it based on Nevada precedent.

So with that loose outline in play, let me start, first, with Mr. Christensen. In reading the motion to dismiss, it does appear that you -- as if you are asking me to reconsider my decision on summary judgment. Is that correct or incorrect?

MR. CHRISTENSEN: No. And I apologize for the incomplete writing.

The only reason to discuss reconsideration and the -- is the non-finality of your ruling because it's not an appealable decision. So it's a non-final decision that can be changed at any time even up until the time of trial, even up until the time that all the issues are decided in the case.

So it was not a motion for reconsideration.

THE COURT: Okay.

MR. CHRISTENSEN: That was just similar cases about reconsideration to illustrate the fact that this is a non-final ruling that can't be used as res judicata in some other action, which is what they've done is used it in this subsequent action filed in this district but in front of a different judicial officer.

THE COURT: Well, that's a different question and something that I'm not going to address here today. What I am going to address, though, is what's before the Court.

All right. So thank you for that clarification. It's not a motion for reconsideration. So it is a question for subject matter jurisdiction. We'll stay within those four corners.

My next question is: Why wasn't this raised prior to summary judgment given that the Lynch action had settled before -- the Lynch action settled -- I wrote it down and left it on my desk. When did the Lynch action settle?

MR. CHRISTENSEN: It was in the fall, I think, of 2023.

THE COURT: Right.

MR. CHRISTENSEN: So about a year before the summary judgment.

THE COURT: It might have been August -- late August of 2023.

So why wasn't this raised or why wasn't a notice filed or why wasn't this motion brought before this Court resolved summary judgment?

MR. CHRISTENSEN: Because Kabul was not aware that Admiral was making a claim for reimbursement of those expenses or for reimbursement of the defense costs that have already been incurred because they didn't plead those in this case.

THE COURT: But you did get a reservation of rights letter, correct?

MR. CHRISTENSEN: Yes.

THE COURT: And so it did advise Kabul that there would be -- they would seek reimbursement if, ultimately, it was determined they didn't have a duty to recover?

MR. CHRISTENSEN: The reservation of rights did.

THE COURT: Okay.

MR. CHRISTENSEN: But then --

THE COURT: So you did know. So you did -- Mr. Christensen, so you did know? It just wasn't pled? There's a difference.

MR. CHRISTENSEN: That they -- that they were reserving the rights to do it in the reservation of rights letter.

THE COURT: Right.

MR. CHRISTENSEN: But when they filed the declaratory relief action, they did not ask for that relief. And so Kabul was under the impression that they were waiving that relief.

THE COURT: What are you relying on to say, A, that you can, A -- first off, what are you relying on to say that they are required to plead it? Let's start there.

MR. CHRISTENSEN: Well, if they don't plead that relief, then they're not seeking that relief. It's not raised in the pleadings.

THE COURT: So that's --

MR. CHRISTENSEN: And so --

THE COURT: -- that's directly contradicted by Nevada Supreme Court precedent. How do you address that?

MR. CHRISTENSEN: Well, you're talking about their claim that --

THE COURT: It's not a claim.

MR. CHRISTENSEN: -- the Nevada Supreme Court can still give -- is that the precedent that you're talking about? The *Nautilus* case?

THE COURT: Correct. Even if it's not pled --

MR. CHRISTENSEN: In that case -- in that case, that the Nevada Supreme Court granted that relief in the action. The action. That would be this action. But that is not what Admiral has done here. So the Court is not asked and still hasn't been asked to grant that relief here. And so that is --

THE COURT: So why are we here?

MR. CHRISTENSEN: Because there is no relief that the Court has been asked to give that grants the Court standing to decide this issue.

THE COURT: Is it your position that I don't have jurisdiction to enter or grant declaratory relief, period?

MR. CHRISTENSEN: Just bare declaratory relief on the issues pled in this case, yes, because the --

THE COURT: "Yes, I have jurisdiction" or "Yes, I

don't have jurisdiction"?

MR. CHRISTENSEN: Yes, you don't have jurisdiction because there is no ongoing duty to defend or to indemnify. That was the basis for the -- the jurisdiction of the Court was an ongoing duty to defend and indemnify Kabul. That duty ended a year before the decision was made. And because a year before the decision was made, that's the only relief that was requested and the only relief that could be granted in this --

THE COURT: Well, it's not the only relief that can be granted based on *Nautilus*.

But let me hear from Mr. Stolworthy regarding this argument.

MR. STOLWORTHY: Thank you, your Honor.

I might just say, first of all, that I just -- sorry to inform the Court that Tracy DiFillippo passed away.

THE COURT: I read that and I am sorry to hear that, as well, and my condolences to you as well as the firm.

MR. STOLWORTHY: Yeah, just want to let you know that. So that's why I jumped in.

THE COURT: I understand.

MR. STOLWORTHY: So what -- what we're hearing here is we're talking in circles with -- with Kabul because *Nautilus*, basically, said here's what you're supposed to do. You're supposed to send a reservation of rights letter. You're not supposed to litigate it in the underlying case with Lynch

because that's a PI case. *Nautilus* says you're supposed to send a reservation of rights letter and then go seek dec relief, and in the meantime, we're going to put the onus on you, Mr. Carrier or Ms. Carrier, you're going to defend. And you're going to defend. And so that's what -- that's exactly what we did.

And there's a couple of cases that -- that Tracy quoted that I just want to harp on a little bit. And that's the *Riverport Insurance* case. In that case, the Court ruled that here, however, there's no compelling reason for the courts to decline to exercise jurisdiction.

The resolution of the Scroggins matter -- the Scroggins matter was the underlying insurance -- or the underlying contract -- temporary restraining preliminary injunction case -- excuse me -- for -- where they wanted to convert it to a preliminary injunction and where the court, you know, talked about habitability exclusions in this case. But they said the resolution of the Scroggins matter will not affect the determination of Riverport's coverage obligations.

So the Court is saying that -- this is a Ninth Circuit case -- or I'm sorry -- Northern District Court California case. It's saying that you still have jurisdiction whether the case -- the underlying case is -- is resolved or not.

And so I -- I wanted to give the Court a new citation of some authority that really clears the matter. And it's the

*American National Fire Insurance case vs. Hungerford*. It's 53 F.3d 1012, 1995 case. In this case, the Court clearly said that in order to determine whether the District Court properly exercised jurisdiction in this case, we must first determine -- and that's what we're doing here today -- whether the case presents an actual case for controversy. And that's the argument that Kabul is raising. It doesn't. This requirement is identical to Article III's constitutional case or controversy requirement. And then it cites the *Kearns* decision, Ninth Circuit.

And this is the telling holding here: "We have previously held that a dispute between an insurer and its insured over the duties to indemnify and defend satisfies this requirement for purposes of the Declaratory Judgment Act whether or not there's an underlying state action pending."

There doesn't even have to be an underlying state action. You can go to the District Court under Article III and get case in controversy jurisdiction to find out whether there's coverage on a duty to indemnify or defend at any time as long as there's a case in controversy that doesn't even have to be filed. It didn't have to be pending.

So that authority and the Ninth Circuit line of cases clearly says that the settlement of the Lynch/Kabul PI action did not deny the Court of jurisdiction.

Admiral's duty to defend and indemnify were not

resolved in the Lynch's action. They sent a reservation of rights letter. They did not -- did what *Nautilus* asked them to do. Riverport says that the resolution of the underlying action does not affect coverage obligation determinations under declaratory relief. So there's plenty of authority for the Court to do what it did.

And if there's any other questions, your Honor, I can answer them.

THE COURT: I don't have any additional questions at this time. I want to go back to Mr. Christensen and revisit essentially -- I want to clarify what I feel like his issue is.

And it seems like you are frustrated by the new action that was filed and is now pending before Judge Navarro; is that correct?

MR. CHRISTENSEN: No, I'm not frustrated by it, your Honor, but it demonstrates the lack of relief that's required under Article III standing. And that is --

THE COURT: How does it demonstrate that?

MR. CHRISTENSEN: Because they're asking for that very relief in that subsequent action.

Instead of -- I -- I grant you, if they had requested to amend post your decision -- even now, if they requested to amend, then we would issue the pleading. We would -- we would object to that motion to amend. We would plead that those are improper claims that can't be brought at this stage, that

they've been waived, that they don't exist under Arizona law. We would do all of that. And that would provide standing. But how this was pled, there was no standing at the time this was issued.

And how it's -- and the state of it currently pled -- the way it's pled currently is that the Court cannot issue anything that gives relief to Admiral with regard to this finding because there's -- because there's no relief requested.

THE COURT: So the request for me to determine whether or not they had a duty to defend or a duty to indemnify is not relief I can grant?

MR. CHRISTENSEN: It's important to distinguish what that is.

Duty to -- current duty to defend -- and that's the confusion that counsel is trying to introduce by saying the case doesn't even have to be pending. That's true. Because the ongoing duty to defend and the ongoing duty to defendant -- to indemnify is not dependent upon and not decided in the underlying tort claim.

But there does have to be an active claim, because if -- without an active underlying tort claim, there is no continuing duty to defend and continuing duty to defend -- to indemnify. That's the -- that's the issue that gave the Court declaratory relief jurisdiction until that -- but those duties, those two continuing duties and on settlement of the claim --

THE COURT: So --

MR. CHRISTENSEN: -- on resolution of the claim --

THE COURT: -- if I understand you correctly, an insurance company can send a reservation of rights letter, defend and/or indemnify, and if it turns out the tort claim gets settled quickly for whatever reason -- they decide to take a quick settlement -- the insurance company is out of luck? They're -- even though they sent the reservation of rights, they have no duty or no way to say, "Hey. Yeah, we did that because we sent the reservation of rights and we're required to under law but we didn't have to and we want a Court to decide that"?

MR. CHRISTENSEN: No. There's two ways they could have and should have done it. And there are only two ways.

One is when they first filed the declaratory relief action, they should have preserved those issues in the declaratory relief action.

THE COURT: What are you relying on when you say that they have to do that? What case law? What authority are you relying on to say that they have to do that?

MR. CHRISTENSEN: Well, I'm just relying on common sense because that is the duty -- that -- that's the relief that the Court could give.

But suppose they don't do that -- and also, because of the reservation of rights letter -- that's a very technical

thing that the insurance company needs to do because they're dealing with somebody who's not very cognizant of how the legal system works and they are held to a very high duty, insurance companies, in litigation with their policyholders and in communications with their policyholders. So that's one way they could have done it.

The other way --

THE COURT: So to be clear, you're relying on common sense? No points and authorities as you stand up and make that argument here today?

MR. CHRISTENSEN: Well -- well, I should say -- I shouldn't say just common sense. That's the way the rules are written. You can't --

THE COURT: What rule?

MR. CHRISTENSEN: -- typically -- the rules of Court. You can't --

THE COURT: What rule, Mr. Christensen?

MR. CHRISTENSEN: Well -- so -- pleading. You're supposed to plead your causes of action. You're supposed to plead your damages.

And so in this particular case, the only relief prayed for is a determination of their ongoing duty to defend and their ongoing duty to indemnify.

But if I could just fill in the other end of it, and that is once they got the case settled, the underlying case

settled, and they knew that they wanted to be reimbursed and wanted to have -- be reimbursed for the settlement amount, then they could have requested amendment of their pleadings and pled that action for reimbursement.

THE COURT: Again, what are you relying on that would require them to replead or seek amendment to add that in? What authority are you relying on?

MR. CHRISTENSEN: Again, it's just the practice of law that we are all engaged in that you have to plead the relief that you're requesting. That's the law I'm relying on.

THE COURT: All right. Well, the Ninth Circuit has addressed this issue. This was back from the *Nautilus* decision. There, the District Court determined that there was no duty to defend and the Court denied a motion for reimbursement because it did not allege a claim for reimbursement or damages in the complaint.

The Ninth Circuit affirmed the holding in *Nautilus* that there was no duty to defend but reserved judgment on whether *Nautilus* could seek further relief. The Ninth Circuit then certified that question to the Nevada Supreme Court. And the Supreme Court held that whenever a court determines that the insurer never had a duty to defend and the insurer clearly and expressly reserved its right to seek reimbursement, it is equitable to require the policyholder to pay.

That is from *Nautilus Insurance Company versus Access*

*Medical, LLC*. The cite is 482 P.3d 683. The PIN cite is 689. And that's a 2021 case from the Nevada Supreme Court. That was an en banc decision.

So the Nevada -- the Ninth Circuit reversed the District Court's denial of request for reimbursement and remanded the action back to District Court for calculation of a reimbursement amount. So in that case, there was no specific prayer for relief of reimbursement. The Nevada Supreme Court said it didn't matter because there was an express reservation of rights, which is precisely the situation that we have here.

And so the case law says otherwise. And the case law permits me and allows me to decide the question of whether or not there was the duty to defend and/or indemnify. And I have done so here. Stated otherwise, I do have subject matter jurisdiction. And the motion to dismiss is, therefore, denied.

I will not be issuing a findings of fact and conclusions of law. The transcript of this hearing will serve as the findings of fact and conclusions of law.

So ECF Number 159 is denied.

There are a couple of other pending matters. 157 is the motion to extend time and 158 is the proposed pretrial order.

I believe ECF Number 157, which is the motion to extend time, is denied as moot because the proposed pretrial order was filed on December 9th. So 157 is denied as moot.

158, I'm not sure we need -- I'm not -- all right. So what is the status now with the proposed pretrial order? Do we need to make any amendments to that?

MR. CHRISTENSEN: Well, are we going to be having -- are we going to be litigating the amount of the reimbursement and the amount of any payments that were made and the -- and the defense that was put forward by Admiral since that is the basis for the Court's jurisdiction over Admiral versus --

THE COURT: The amount of payments is not the basis for the jurisdiction, Mr. Christensen. The basis for the Court's jurisdiction is the question on whether or not there was a duty to defend or indemnify.

There is a secondary correlated related aspect of that, and that's whether or not they are seeking reimbursement. I don't know the answer to that. But I know that I did...

MR. CHRISTENSEN: So you're allowing that to be decided in this other case that was filed in 2024?

THE COURT: Well, Mr. Christensen, that question as to whether or not I'm allowing that to be decided isn't before me.

MR. CHRISTENSEN: Well, you kind of put it before you by saying that your jurisdiction is based on the fact that you can grant this relief even though it's not pled. That's the *Nautilus* case.

THE COURT: Right.

MR. CHRISTENSEN: That relief was given in the very

same case.

In this case -- that hasn't been requested in this case and so it's not relief that you would be providing in this case unless it is -- it is your intention to provide that relief. Then that would make sense. But then we would need to brief that and have motions with regard to that because -- and -- because they have not, to this point, requested that relief in this case.

THE COURT: I realize that.

MR. CHRISTENSEN: And that's -- and that means that your decision on summary judgment as their duty to indemnify and duty to defend is standing there naked. That's -- that's the difference between the *Nautilus* case and our case as we find ourselves here in the pleadings in our case.

THE COURT: All right. Let's hear from Mr. Stolworthy on what the plan is, if they are going to seek any additional relief in this action or if this action is officially over.

MR. STOLWORTHY: Judge, this action is officially over. We have filed a separate reimbursement action based on this Court's decision. This Court was a foundational decision. We didn't ask for the relief in this Court. It's foundational.

We filed a separate reimbursement action based on this Court's decision filed on the -- November 4th for -- 2024 for unjust enrichment, equitable estoppel, equitable subrogation to recoup settlement and attorney's fees.

*Nautilus* is clear, in my mind, that -- that you can -- claims are not ripe until the Court makes this decision. And that is whether there's a duty to defend or indemnify. And then you can -- that's a foundational decision.

There's no authority that says you can't file a separate action. No authority at all. You can pursue it if you -- if you -- if you want here, I would imagine, even though it's unpled, but you don't have to. You can file a separate action. There's no authority that says that you can do that.

But we have exercised our option to file a separate action. And that's what we intend to do.

But I would say that if the Court thinks that there's authority out there, which I'm not aware of, that we need to plead it in this action, and I've not seen that authority that we have to, then we'll plead it in this action.

THE COURT: Right. So this action between you and Kabul is done. What's the status with you and GEFB?

MR. STOLWORTHY: With the broker?

THE COURT: Uh-huh.

MR. STOLWORTHY: In this action or in the other action?

THE COURT: In this action.

MR. STOLWORTHY: I don't think we brought a claim against the broker in this action, your Honor. I just jumped in the case, but I'm not -- we don't -- we're out of this case

from my understanding. We never brought a claim against the broker.

THE COURT: Well, we had G -- I'm going to just say it by its short name. They filed a motion for summary judgment. I denied that back on the same day I granted your motion for summary judgment. And so I honestly didn't spend time looking at the process or the status of that case. I was just wondering what you knew. And I recognize that you have joined this after the fact for obvious reasons. So, perhaps, it's something that we don't need to worry about. It was really a question for clarity on my mind.

MR. STOLWORTHY: Yeah, and I'm sorry I can't answer that.

THE COURT: That's okay.

MR. STOLWORTHY: It's my understanding -- it's my understanding we don't have a current action against the broker.

THE COURT: All right. So Mr. Christensen, to the extent that you think it's improper for them to file the new action seeking reimbursement -- I believe that action, at least last I checked, was before Judge Navarro. I'm not sure if it still is before her or not -- then, perhaps, the proper venue to argue is there.

I can't give you -- I can't grant relief that isn't being requested in front of me. And I can't give an advisory

opinion as to how that would work. And so it appears that the proper place to lodge the complaints regarding how Admiral has prosecuted the -- their claims and these cases lies in front of that court, not this court.

So I'm going to -- here's what I'm going to do. I'm going to strike the pretrial order that was filed on December 9th at ECF Number 158.

I'm going to order the parties to meet and confer and require a status report from the parties within 30 days of today's hearing. So that will be April 5th. Let's make sure that's not a weekend. That is a weekend. So April 4th, a status report will be due essentially advising the Court whether the parties agree that they will -- the reimbursement action will proceed in front of Judge Navarro, or if they disagree on that, that can be included in the status report. And any additional steps the Court needs to take in regards to this action can be included therein. That will be the decision of the Court.

But I can't -- there's nothing else pending before me to decide and so I think that ends this hearing.

Any questions, Mr. Stolworthy?

MR. STOLWORTHY: No, your Honor. Thank you.

THE COURT: Mr. Christensen?

MR. CHRISTENSEN: Just -- just one.

That -- that means all of the parties? So Kabul,

Admiral --

THE COURT: I would require all the parties to meet and confer and to file a status report, correct.

MR. CHRISTENSEN: Okay. Thank you, your Honor.

THE COURT: All right. Thank you, all. Have a good day.

(The proceedings concluded at 10:37 a.m.)

* * *

--o0o--

COURT REPORTER'S CERTIFICATE

I, SAMANTHA N. MCNETT, Official Court Reporter, United States District Court, District of Nevada, Las Vegas, Nevada certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

Date: March 29, 2025

/s/ Samantha N. McNett
Samantha McNett, RMR, CRR, CCR